IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 25-cv-03914-PAB-STV

TVTC HOLDINGS, LLC, a Colorado limited liability company, and
ANIMAL CRITICAL CARE AND EMERGENCY SERVICES, INC., a Colorado corporation,

     Plaintiffs,

v.

BLUEPEARL OPERATIONS, LLC, a Florida limited liability company,

     Defendant.

---

**ORDER**

---

This matter comes before the Court on Defendant BluePearl Operations, LLC's

Motion to Sever Parties and Claims Pursuant to Fed. R. Civ. P. 21 [Docket No. 15].

Plaintiffs filed a response, Docket No. 21, and defendant filed a reply.  Docket No. 23.

## I.  BACKGROUND[1]

Plaintiff TVTC Holdings, LLC ("TVTC") is a Colorado limited liability company,

whose members are Victoria D. Gomez, DVM—a practicing veterinarian—and her

husband, Richard Todd Perry.  Docket No. 8 at 2-3, ¶¶ 2, 8.  Dr. Gomez is also a

shareholder of plaintiff Animal Critical Care and Emergency Services ("ACCESS"), a

Colorado corporation under which Dr. Gomez has run her veterinary practice since

1999.  *Id.* at 2-3, ¶ 3, 9.  Mr. Perry is the manager of Dr. Gomez's practice.  *Id.* at 3,

---

[1] The following facts are taken from plaintiffs' complaint, Docket No. 8, and the exhibits attached to plaintiffs' response.  Docket Nos. 21-1, 21-2, 21-3.  They are undisputed unless otherwise noted.

¶ 10.  In 2015, Dr. Gomez and Mr. Perry located a human outpatient surgical facility in Lakewood, CO ("the Premises").  *Id.*, ¶ 11.  Dr. Gomez and Mr. Perry formed TVTC, which acquired the Premises.  *Id.*, ¶ 12.  TVTC converted the Premises for veterinary use.  *Id.*  ACCESS leased the Premises from TVTC.  *Id.*, ¶ 13.

In 2021, defendant BluePearl Operations, LLC ("BluePearl") contacted Dr. Gomez about the prospect of acquiring her veterinary practice and continuing to operate it at the Premises under a long-term lease from TVTC.  *Id.* at 4, ¶ 15.  Dr. Gomez agreed, and on December 22, 2021, BluePearl entered into an asset purchase agreement with ACCESS and a lease agreement with TVTC.  *Id.* at 4-5, ¶¶ 16-17, 24.  Under the asset purchase agreement, BluePearl acquired ACCESS's veterinary practice.  *Id.* at 4, ¶ 17.  The asset purchase agreement contained a provision wherein BluePearl agreed to pay ACCESS a "Contingent Consideration," often referred to as an "earnout."  *Id.*, ¶ 20.  The amount of the earnout was to be based on total cumulative revenues collected by BluePearl during the period beginning on January 1, 2022 and ending on December 31, 2026.  *Id.* at 4-5, ¶ 21.  Depending on the revenue earned by ACCESS's practice, BluePearl would pay ACCESS an earnout of between $1,000,000 and $5,000,000.  *Id.*  But if the practice did not bring in a certain minimum amount of revenue, BluePearl would not owe ACCESS any money under the earnout provision.  *Id.*  Under Section 3.3(e) of the asset purchase agreement, BluePearl agreed that it would "not take, or cause to be taken, any action that has the specific intent of impeding the Post-Closing Practice's ability to achieve the Revenue Targets."  *Id.* at 5, ¶ 22.

Under the lease agreement with TVTC, BluePearl leased the Premises for a ten-year term, which commenced on December 22, 2021.  *Id.*, ¶¶ 24-26.  The lease

2

agreement provided for a triple net lease.[2]  *Id.*, ¶ 27.  Under the lease agreement,

BluePearl was required to make payments to TVTC in the amount of $275,981.33, to be

paid in equal monthly installments.  *Id.*, ¶ 28.  On each anniversary of the lease, the rent

increased by 2 percent.  *Id.* at 6, ¶ 29.  The lease agreement and the asset purchase

agreement were both included in separate tabs in the closing binder for the transaction.

Docket No. 21-1 at 1.  Furthermore, the asset purchase agreement required execution

of the lease agreement as a condition of closing.  Docket No. 21-2 at 6-7.  The lease

agreement restricted BluePearl's use of the Premises to operating a veterinary hospital,

unless BluePearl got express written consent.  Docket No. 21-3 at 9.

On or around October 5, 2023, BluePearl ceased doing business at the Premises

and shut down the practice it had acquired from ACCESS.  Docket No. 8 at 9, ¶ 49.  Da

Chang, BluePearl's Chief Operations Officer, took the position that, by closing the

veterinary practice, BluePearl would not achieve the revenue targets necessary for

ACCESS to receive the earnout payment.  *Id.* at 8-9, ¶ 47.  BluePearl denied requests

by Dr. Gomez, Mr. Perry, and ACCESS for information about the revenues that

BluePearl received from the veterinary practice.  *Id.* at 9, ¶ 50.  On December 11, 2023,

Mr. Perry raised concerns with BluePearl about its maintenance of the Premises.  *Id.* at

10, ¶ 56.  On December 18, 2023, BluePearl assured Mr. Perry that BluePearl would be

entering into a maintenance contract for the Premises.  *Id.*, ¶ 57.  However, BluePearl

---

[2] "A triple net lease is normally a commercial lease where the lessee pays rent and utilities as well as three other types of property expenses: insurance, maintenance, and taxes."  *Gordon v. Pasquarello*, 2023 WL 2505538, at *5 n.11 (E.D. Pa. Mar. 14, 2023) (citation and internal quotations omitted); *see also Rush v. Rosetto Realty Grp., LLC*, 2018 WL 4110948, at *1 n.2 (D.N.J. Aug. 29, 2018).

declined its contractor's recommendation to replace a motor in the HVAC system. *Id.*, ¶ 58. On or about January 18, 2024, the water pipes in the Premises froze and burst. *Id.*, ¶ 59. The burst pipes caused substantial damage to the Premises. *Id.*, ¶¶ 60-61. BluePearl did not take steps to remove the accumulated water; water remained in the crawl space for approximately three months. *Id.* at 11, ¶ 62. BluePearl informed Dr. Gomez and Mr. Perry that it would make repairs to the Premises, but did not do so. *Id.*, ¶¶ 63-66. On July 3, 2024, Mr. Perry discovered that the Premises was broken into and that squatters had been living in the Premises for some time. *Id.* at 11-12, ¶¶ 67-71. The squatters left feces, used needles, and other drug paraphernalia scattered throughout the Premises. *Id.* at 12, ¶ 72. The squatters also stole copper pipes, electrical wires, and metal doorknobs. *Id.*, ¶ 74. BluePearl filed an insurance claim, which was denied, and BluePearl failed to repair the Premises. *Id.* at 13-14, ¶¶ 84-87. On or about October 16, 2025, BluePearl notified TVTC that it considered the lease to be terminated. *Id.* at 14, ¶ 88. Since then, BluePearl has failed to make rent payments. *Id.*, ¶ 89.

On November 5, 2025, plaintiffs filed a complaint in Colorado state court. *See generally id.* TVTC claims that BluePearl breached the lease agreement, and ACCESS brings a claim that BluePearl breached the asset purchase agreement. *Id.* at 14-21, ¶¶ 91-141. On December 5, 2025, BluePearl removed the action to federal court. Docket No. 1. On December 11, 2025, BluePearl filed a motion to sever pursuant to Federal Rule of Civil Procedure 21. Docket No. 15. Plaintiffs filed a response, Docket No. 21, and BluePearl filed a reply. Docket No. 23.

## II. LEGAL STANDARD

Rule 21 of the Federal Rules of Civil Procedure governs misjoinder and nonjoinder of parties, providing that "[t]he court may [ ] sever any claim against a party." Fed. R. Civ. P. 21.  Severance under Rule 21 creates a separate case.  *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1519 (10th Cir. 1991).  A court has broad discretion in deciding whether to sever parties or claims.  *German by German v. Fed. Home Loan Mortg. Corp.*, 896 F. Supp. 1385, 1400 (S.D.N.Y. 1995).  "The cases make it clear that parties are misjoined when they fail to satisfy either of the preconditions for permissive joinder of parties set forth in Federal Rule of Civil Procedure 20(a)."  7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Fed. Prac. & Proc. Civ. § 1683 (3d ed. 2010).

The joinder of claims in a single action is governed by Rule 20 of the Federal Rules of Civil Procedure, which provides that parties "may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action."  Fed. R. Civ. P. 20(a)(1).  The permissive joinder rule is to be construed liberally "to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple law suits."  *Cooper v. Fitzgerald*, 266 F.R.D. 86, 88 (E.D. Pa. 2010) (internal quotation and citation omitted).  As the Supreme Court stated, it is often beneficial for courts to entertain the "broadest possible scope of action consistent with fairness to the parties"; thus, "joinder of claims, parties and remedies is strongly encouraged."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

## III.  ANALYSIS

BluePearl argues that plaintiffs' claims are misjoined because they do not arise out of the same transaction, occurrence, or series of transactions or occurrences and because they do not involve a common question of law or fact.  Docket No. 15 at 4-8. BluePearl also argues that severing plaintiffs' claims will increase judicial efficiency, reduce discovery, and avoid prejudice in determining attorney's fees.  *Id.* at 8-9.

"The first requirement for joinder is that the claims must 'aris[e] out of the same transaction, occurrence, or series of transactions or occurrences.'"  *DIRECTV, Inc. v. Barrett*, 220 F.R.D. 630, 631 (D. Kan. 2004) (quoting Fed. R. Civ. P. 20(a)).  "[A]ll logically related events entitling a person to institute a legal action against another typically are regarded as comprising a transaction or occurrence."  7 Wright, et al., Fed. Prac. & Proc. Civ. § 1653 (3d ed.).  Here, plaintiffs argue that their claims satisfy this requirement because the asset purchase agreement and lease agreement were both part of BluePearl's acquisition of the veterinary practice and because both claims arise out of "Defendant's abandonment of the veterinary practice and leased animal hospital on or about October 5, 2023."  Docket No. 21 at 4.

BluePearl argues that it is irrelevant for purposes of joinder that both contracts were part of BluePearl's acquisition of the veterinary practice, stating that "the right to relief—not contract formation—must arise from the same transaction or occurrence." Docket No. 23 at 3.  Thus, because the relief sought by plaintiffs arises out of breaches of separate contracts, BluePearl argues that any connection involving the formation of the contracts is not logically related to plaintiffs' requests for relief.  *Id.*  But a breach of contract is inextricably linked to the formation of the contract; one cannot breach what does not exist.  And the formation of the two contracts in this case are unequivocally

6

related to one another, the asset purchase agreement explicitly required execution of the lease agreement.  Docket No. 21-2 at 6-7.  Both contracts were formed in the same transaction—BluePearl's acquisition of the veterinary practice—and thus the right to relief based on alleged breaches of those contracts arise out of the same transaction.

Moreover, even if the formation of the contracts is unrelated to the breaches of those contracts, plaintiffs' right to relief still arises out of the same occurrence, namely, BluePearl's October 5, 2023 abandonment of the veterinary practice.  ACCESS's breach of contract claim alleges that BluePearl shut down the practice in order to avoid payment of the earnout.  Docket No. 8 at 19-21, ¶¶ 125-141.  TVTC's breach of contract claim alleges that, after shutting down the practice, BluePearl failed to fulfill its obligation to maintain the Premises and insurance coverage on it.  *Id.* at 14-18, ¶¶ 91-124.  Thus, both claims are premised on BluePearl shutting down the veterinary practice on October 5, 2023.  BluePearl, however, argues that any causal relationship is "impossible" because BluePearl closed the veterinary practice on October 5, 2023 and the pipes in the Premises did not burst until January 18, 2024.  Docket No. 15 at 7.  The Court finds this argument unavailing.  While the pipe damage to the Premises occurred months later, the damage allegedly occurred due to BluePearl's failure to maintain the Premises after shutting down the veterinary practice.  Thus, both breach of contract claims arise out of the same occurrence.  The Court finds that the first requirement for joinder is satisfied.

Fed. R. Civ. P. 20(a) also requires questions of law or fact common to all plaintiffs.  Plaintiffs assert that their theory of the case is that BluePearl "abandoned the veterinary practice and vacated the leased premises because it decided that the

7

practice was insufficiently profitable, considering the earnout payment it eventually would owe ACCESS under the Asset Purchase Agreement and the increasing triple-net lease payments it owed TVTC Holdings under the Lease Agreement." Docket No. 21 at 5. Thus, plaintiffs argue that defendant's reason for abandoning the veterinary practice and vacating the Premises presents a common question of fact. *Id.* at 6. The Court agrees. The asset purchase agreement states that BluePearl cannot take any action that has the specific intent of impeding the veterinary practice's ability to achieve the revenue targets. Docket No. 8 at 5, ¶ 22. Thus, BluePearl's reason for shutting down the veterinary practice is directly related to ACCESS's claim. Moreover, BluePearl brings a counterclaim against TVTC for breach of the lease agreement. Docket No. 22 at 21-22, ¶¶ 40-45. Thus, BluePearl's reason for shutting down the veterinary practice is related to whether or not BluePearl left the lease due to improper financial motivations or due to a genuine breach by TVTC. Accordingly, there is at least one common question of fact, and "[j]oinder may be permissible even if there is only one question of law or fact common to the parties." *Leoff v. XYZ Subdivision Land Co., LLC*, No. 10-cv-01243-MSK-KMT, 2010 WL 11579095, at *4 (D. Colo. Oct. 22, 2010) (citation omitted). The Court therefore finds that plaintiffs have properly joined their claims.

Nevertheless, BluePearl points out that, "although Rule 21 is written in terms of misjoinder, severance is not limited to that circumstance. Instead, district courts have discretion to sever claims from a case for any sound reasons." Docket No. 15 at 3 (citing 4 *Moore's Federal Practice—Civil* § 21.02 (3d ed.)). BluePearl argues that it

would be prudent to sever plaintiffs' claims because it would be more efficient, reduce discovery, and avoid prejudice in determining attorney's fees.[3]  *Id.* at 9.

Plaintiffs, on the other hand, argue that it would be imprudent to sever their claims.  Docket No. 21 at 8-10.  Plaintiffs note that there is no risk of jury confusion because the asset purchase agreement and lease agreement contain jury waivers. Docket No. 21 at 8.  Plaintiffs point out that BluePearl's efficiency argument is conclusory and, in fact, the opposite is true.  *Id.* at 9.  Plaintiffs state that severing these claims would necessitate two bench trials, two final pretrial conferences, and two scheduling conferences.  *Id.*  Plaintiffs assert that Dr. Gomez and Mr. Perry would be witnesses in both cases, and that BluePearl's officers would also be deposed in both cases.  *Id.*  Finally, plaintiffs argue that severing their claims could impede settlement because the claims would be "on different tracks for purposes of discovery, dispositive motions, and trial."  *Id.* at 10.  The Court agrees that severing plaintiffs' claims would likely decrease efficiency and increase the burdens of discovery on both the parties and the Court.

Finally, the Court is unpersuaded that severance is prudent due to difficulties in calculating attorney's fees.  In its reply, BluePearl points out hypothetical scenarios in which calculating attorney's fees could be greatly complicated by joinder of plaintiffs' claims.  Docket No. 23 at 4-6.  The Court finds it inappropriate to sever properly joined

---

[3] In its reply, BluePearl also makes arguments that it would be prudent to sever the claims because the lease agreement is governed by Colorado law and the asset purchase agreement is governed by Delaware law.  Docket No. 23 at 1-7.  However, BluePearl makes no such argument in its motion, and "a party waives issues and arguments raised for the first time in a reply brief."  *Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016) (citation omitted).  Even if the Court considers this argument, a trial to court poses little risk of prejudice to BluePearl.

claims due to hypothetical scenarios that may not occur.  Moreover, even if BluePearl's

fears are realized, courts regularly make complex determinations when awarding

attorney's fees.  Accordingly, the Court will deny the motion to sever.

## IV.  CONCLUSION

Therefore, it is

**ORDERED** that Defendant BluePearl Operations, LLC's Motion to Sever Parties

and Claims Pursuant to Fed. R. Civ. P. 21 [Docket No. 15] is **DENIED**.

DATED July 21, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge